UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-01 AREF NAGI, ET AL.,

        Defendants.

                                   /

Case No. 06-20465

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT AREF NAGI'S MOTION TO
SUPPRESS TITLE III INTERCEPTS [1091] AND JOINDERS**

Defendant Aref Nagi (D-01) is charged in multiple counts of a Fifty-Count Second Superseding Indictment. At a hearing held on February 24, 2010, this matter came before the Court on Defendant's motion to suppress Title III intercepts. Defendant's motion challenges the following Orders issued under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520:

A. Wiretap of Aref Nagi Phone Number

    1. October 7, 2005 initial order signed by Judge Battani;

    2. December 8, 2006 extension order signed by Judge Hood;

    3. March 2, 2006 extension order signed by Judge Hood; and

    4. April 5, 2006 extension order signed by Judge Hood.

B. Wiretaps of Robert Burton and Philip McDonald Phone Numbers

    1. November 1, 2005 initial order signed by Judge Hood;

    2. January 30, 2006 extension order; and

3. May 1, 2006 extension order.

C. Wiretaps of Phone Used by Anthony Viramontez

1. January 4, 2006 initial order signed by Judge Friedman;

2. April 5, 2006 extension order.

Each Order was predicated on an affidavit prepared by a Special Agent.  For the reasons stated below, Defendant's motion to suppress is DENIED.

**I.    Facts**

**A. Background**

Defendant Nagi was originally charged on September 6, 2006 in a two-count Indictment.  He is currently charged in eleven counts of a December 15, 2009 Second Superseding Indictment with the following charges:  Count 1 - Conducting or Participating in the Affairs of an Enterprise Through a Pattern of Racketeering Activity in violation of 18 U.S.C. §§ 1962(c), 1963(a); Count 2 - Conspiracy to Participate in an Interstate Enterprise through a Pattern of Racketeering Activities in violation of 18 U.S.C. §§ 1962(d), 1963(a); Count 7 - Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(3); Count 12 - Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(6); Count 15 - Conspiracy to Transport Stolen Property in Interstate Commerce in violation of 18 U.S.C. §§ 2312, 371; Count 16 - Conspiracy to Alter, Remove and Obliterate VINs in violation of 18 U.S.C. §§ 511, 371; Count 19 - Conspiracy to Possess with Intent to Distribute and Distribution of Controlled Substances in violation of 18 U.S.C. § 846; Count 31 - Use of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c); Counts 49 and 58 - for Forfeiture under 21 U.S.C. § 853(a); and Count 50 - for Forfeiture of Firearms under 18

U.S.C. § 924(d).

An investigation into the Highwaymen Motorcycle Club began in 2004 with the arrests of several low level dealers who agreed to cooperate with the government. At the same time, two confidential informants ("CIs") came to the attention of the FBI.

One CI was William Smith. Smith was a long time, "old school" member of several different motorcycle clubs and owned the Copa Lounge; a local bar patronized by different clubs at various times. Smith became an informant for the ATF and provided an extensive history of the clubs in the Detroit area. Smith allowed the FBI and the ATF to "wire" his bar. Numerous conversations about gun and drug deals were taped. Smith dealt primarily with the Outlaws Motorcycle Club, but his friendships extended to members of other clubs as well. Smith provided information on various members of these clubs and participated in controlled purchases of narcotics and firearms.

The other CI was Doug Burnett. Shortly after Smith became a CI, Doug Burnett voluntarily approached the FBI with information on the Highwaymen Motorcycle Club. Burnett had associated with the Highwaymen for years, had recently become a member, and was concerned about the violent acts committed by members of the Highwaymen. Burnett agreed to work with the FBI, including wearing a "wire," purchasing narcotics, and providing information. He ultimately had to be relocated due to threats by the Highwaymen.

**B. Title III Wiretap Summary**

The interception of wire communications is detailed below.

**1. Wiretap of Aref Nagi Telephone Number 313.220.2500**

Interception of telephone number 313.220.2500, used by Defendant Aref Nagi, began on October 7, 2005 and continued until May 5, 2006.

The initial wiretap order was signed on October 7, 2005 by Judge Battani. It named the following individuals as principals: Aref Nagi, Johnny Jarrell, Robert Burton, Gary Ball, Joseph Whiting, and Philip McDonald. Defendant Nagi analyzes the ten-day, twenty-day, and thirty-day reports issued for this October 7, 2005 Order and argues that there were 7,677 intercepts with 383 alleged criminal conversations and only 249 phone calls were minimized. (Def.'s Mot. at 2.)

The first extension order was signed on December 8, 2005 by Judge Hood. It added the following individuals as principals: Hatim Attallah, Nicholas Jackson, Aaron Roberts, Michael Watson, and Roy Baca. Defendant Nagi analyzes the ten-day, twenty-day, and thirty-day reports for this December 8, 2005 extension order and argues that there were 7,530 interceptions with 387 alleged criminal conversations and only 241 phone calls were minimized. (Def.'s Mot. at 3.)

The second extension order was signed on March 2, 2006 by Judge Hood. It added the following individuals as principals: Erick Manners and Avelino Ventura. It also added the following telephone numbers: 248.918.5577, subscribed to by James Johnson and used by Aref Nagi; and 313.995.2251, subscribed to and used by Aref Nagi. Defendant Nagi analyzes the ten-day, twenty-day, and thirty-day reports for each of the phones listed in the March 2, 2006 extension order and argues that there were 5,534 interceptions with 289 alleged criminal conversations and only 197 phone calls minimized. (Def.'s Mot. 4.)

The third extension order was signed on April 5, 2006 by Judge Hood. It dropped telephone number 313.995.2251, subscribed to and used by Aref Nagi. Defendant Nagi analyzes the ten-day, twenty-day, and thirty-day reports for the April 5, 2006 extension order and argues that there were at least 4,478 intercepts with at least 352 alleged criminal

4

conversations and only 140 phone calls minimized.  (Def.'s Mot. at 5.)

Each of these orders was predicated on an affidavit prepared by Special Agent Edward Brzezinski.

**2.  Wiretaps - Robert Burton and Philip McDonald Phone Numbers**

Interception of telephone numbers 313.332.8609, used by Highwaymen member Robert Burton, and 734.624.6113, used by Highwaymen member Philip McDonald, began on November 1, 2005 and continued until May 31, 2006.

The initial order was signed on November 1, 2005 by Judge Hood.  It included the following individuals as principals:  Robert Burton, Aref Nagi, Johnny Jarrell, Joseph Whiting, Philip McDonald, Jeffrey Pitman, Anthony Smerigan, and Anthony Viramontez.

The first extension order was signed on January 30, 2006.  It added the following individuals as principals:  William Slowski, Jeffrey Miner, Dennis Fitzpatrick, and Ronald Wise.  It also added the telephone number 313.633.7838, subscribed to by Steve Dirck and used by Robert Burton.

The second extension order was signed on May 1, 2006.  It added as principals Gary Ball and Charron McDonald.  It also dropped telephone number 313.332.8609, subscribed to and used by Robert Burton.

Each of these orders was predicated on an affidavit prepared by either FBI Special Agent Richard Wozniak or FBI Special Agent Edward Brzezinski.

**3.  Wiretaps - Phone Numbers Used by Anthony Viramontez**

Interception of telephone numbers 248.670.2159 and 313.529.5103, subscribed to Stacie Kuciemba and used by Anthony Viramontez (alleged leader of the Latin Counts

Street Gang and associate of the Highwaymen), began on January 4, 2006 and was extended on April 5, 2006. It included the following individuals as principals: Anthony Viramontez, Hector Cuevas, Demetrius Kotsoyiainis, Philip McDonald, Gary Ball, Amanda Curry, Nazeh Bazzy, and Salvador Camerena. (Def.'s Ex. 2, 1/4/06 R. Wozniak Aff.)

The first extension order was signed on April 2006. It added the following individuals as principals: Kevin Blanchette and Aref Nagi. It added the telephone number 313.205.9470, subscribed to by Angelica Villarreal and used by Anthony Viramontez. It dropped telephone number 248.670.2159.

## II.  Analysis

Defendant Nagi first argues that the government failed to minimize the interception of communications involving him when monitoring and recording the targeted telephone number, as required under 18 U.S.C. § 2518(5).

Defendant Nagi next argues that the applications and affidavits submitted in support of the above-described wiretap orders fail to satisfy the statutory requirement of providing:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c) and (3)(c). Alternatively, Defendant Nagi argues that the Brzezinski affidavits contain false, misleading statements and/or material omissions regarding the use of non-wiretap techniques and thus an evidentiary hearing is warranted under *Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, Defendant argues that the government did not give serious consideration to non-wiretap techniques, did not accurately describe all the information obtained from non-wiretap techniques, and omitted information that would have assisted the Court in determining whether the requested wiretaps were necessary.

6

Finally, Defendant Nagi argues that, because orders to seal were not issued immediately upon the expiration of each wiretap order or extension, 18 U.S.C. § 2518(8)(a) and (8)(b), the Title III wiretaps must be suppressed.

The government responds that (1) Defendant Nagi fails to meet his burden of establishing that the monitoring agents failed to minimize all interceptions as required under 18 U.S.C. § 2510, *et seq.*; (2) Defendant Nagi has not shown that the Special Agent affidavits do not satisfy the statutory requirements for the initial wiretap orders and all extensions; (3) Defendant Nagi has not shown any deliberately false statements or statements made in reckless disregard for the truth in any of the Special Agent affidavits and thus is not entitled to a *Franks* evidentiary hearing; and (4) it has no objection to Defendant Nagi's request for copies of Sealing orders.

The Court's analysis begins with Defendant's minimization argument.

**A. Minimization**

Section 2518(5) provides, in pertinent part, that wiretap orders are required to contain a provision stating that all intercepts "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. . . ." 18 U.S.C. § 2518(5). The orders authorizing wiretaps in this matter uniformly state:

> All of the interceptions will be minimized in accordance with Chapter 119, Title 18, United States Code. Interceptions will be minimized when it is determined through voice identification, physical surveillance or otherwise that none of the named interceptees or their confederates, when identified, are participants to the conversation, unless it is determined the conversation is criminal in nature. Interceptions will be suspended when it is determined that conversations are not criminal in nature. Intermittent spot monitoring will be utilized to ensure that a minimized conversation has not become criminal in nature. Interceptions of a privileged nature (e.g. attorney/client, priest/penitent, etc.) will also be immediately minimized upon discovery of the nature of the conversations.

7

(Def.'s Ex. 1, Brzezinski 10/7/05 Aff. at ¶ 82; Ex. 3, Wozniak 11/1/05 Aff. at ¶ 86; Ex. 4, Brzezinski 1/30/06 Aff. at ¶ 120; Ex. 5, 3/2/06 Brzezinski Aff. at ¶ 101; Ex. 6, Brzezinski 5/1/06 Aff. at 125.)

Despite the government's compliance with the plain language of § 2518(5), Defendant Nagi's motion to suppress, using statistical analysis, argues that the government failed to properly minimize the scope of its discovery and further argues that he is entitled to an evidentiary hearing to "flesh out" the issues relating to the minimizing procedures employed by the government. Defendant's motion and supplemental brief fail to identify a single conversation that should not have been monitored. In his Reply, however, Defendant does come forward with "a listing of a portion of the calls" that he believes "adequate minimization procedures were not employed." (Def.'s Reply, Ex. A, list of calls.) In Exhibit A, Defendant Nagi lists categories of calls where the government allegedly failed to employ adequate minimization procedures; i.e., calls between Defendant and his family; Defendant and his "personal friends;" Kelly Sosa's calls to her boyfriend; Defendant's calls with "paramours;" some of Defendant's business calls; and Defendant's conversations with Co-Defendant attorney Hatim Attallah; and one call between Defendant and attorney Pete Zingas on December 16, 2005.

The government responds that an evidentiary hearing is not required because Defendant failed to show that minimization may not have occurred despite having access to <u>all</u> taped communications and transcripts of many. Moreover, at the February 24, 2010 hearing, the government explained in detail the minimization procedures it employed, repeated an earlier offer to make Defendant Nagi's call logs available for defense counsel's review, and confirmed that all calls of a privileged nature were properly minimized. The

government then addressed Defendant Nagi's claim that his personal calls with female

friends were improperly minimized. It explained that the women Defendant Nagi references

were housed in "stash houses," and conversations that initially started out as personal also

discussed drug transactions and thus became criminal in nature. This Court agrees with

the government that Defendant Nagi has not met his burden of showing that an evidentiary

hearing is required on the issue of minimization.

First, Defendant Nagi improperly attempts to shift the burden of proof to the

government on this issue. The Sixth Circuit rejected a similar effort in *United States v.*

*Giacalone*, 853 F.2d 470 (6th Cir. 1988). There, the court began its discussion of

minimization by observing that "the law is clear in this circuit that the burden of production

and persuasion rests on the person seeking to suppress evidence." *Id.* at 482 (internal

quotation marks and citations omitted). Here, that person is Defendant Nagi.

Second, on the question "whether an evidentiary hearing should be held in the first

place," the *Giacalone* court further observed that "a defendant must make at least some

initial showing of contested facts to be entitled to such a hearing." *Id.* at 483. In *Giacalone*,

the defendants had received much of the information they sought regarding the scope of

surveillance, including copies of all wiretap applications, all wiretap authorization orders,

and logs and tapes made during the course of electronic surveillance. *Id.* The district court

had also ordered the government "to provide copies of transcripts of intercepted

conversations that had been prepared." *Id.* Considering all the information that had been

provided the defendants, the Sixth Circuit determined that "the district court clearly did not

abuse its discretion in denying an evidentiary hearing when defendants failed to show that

minimization may not have occurred." *Id.* Similar to the defendants in *Giacalone*, despite

being provided a wealth of information, Defendant Nagi has not made the required initial showing of contested facts that entitle him to an evidentiary hearing on the issue of minimization. His reliance on statistics for his minimization argument; i.e., 3 percent of calls were minimized, is inadequate to carry his burden on this issue. Moreover, as discussed above and at the February 24, 2010 hearing, the government persuasively rebutted Defendant's argument that the minimization procedures that it employed were inadequate and persuasively rebutted Defendant's arguments that personal calls to female friends were inadequately minimized.

The Court next addresses Defendant Nagi's argument that he is entitled to a *Franks* evidentiary hearing to determine whether the Special Agent affidavits submitted in support of the wiretap orders contained deliberately false statements or false statements that resulted from the reckless disregard for the truth.

## B. *Franks* Hearing

The Supreme Court observed in *Franks v. Delaware*, 438 U.S. 154 (1978), that a defendant is not entitled to an evidentiary hearing unless he satisfies two requirements. The defendant must "make[] a substantial preliminary showing" that (1) a false statement was "knowingly and intentionally, or with reckless disregard for the truth" included by the affiant in a supporting affidavit; and (2) "the allegedly false statement is necessary to the finding of probable cause. . . ." *Id.* at 155-56. "It is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants must make a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the [informant] with reckless indifference to the truth." *Giacalone*, 853 F.2d at

10

475-76. "[T]he fourth amendment does *not* require 'that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information within the affiant's own knowledge that sometimes may be garnered hastily.'" *Id.* at 476 (quoting *Franks*, 438 U.S. at 165). "Under *Franks*, suppression is required only when the *affiant* deliberately lied or testified in reckless disregard of the truth." *Id.* at 477.

Rather than point to instances where the Special Agent affiant either deliberately lied or made a statement in reckless disregard of the truth, Defendant Nagi argues that the following omissions or misrepresentations satisfy the requirements for a *Franks* hearing. The government responds to each instance identified by Defendant Nagi, persuasively arguing that the *Franks* standard has not been satisfied.

### 1. Confidential Informants

Defendant Nagi first challenges the October 7, 2005 Brzezinski Affidavit. Special Agent Brzezinski stated that three confidential informants were assisting the government at that time and had provided some beneficial information about drug transactions by members of the Highwaymen. (10/7/05 Brzezinski Aff. at ¶¶ 21-50.) Nonetheless, use of confidential sources had proved inadequate because they were reluctant to testify out of fear for their safety and the safety of their families.

Defendant Nagi challenges these statements, arguing that (1) the affiant failed to state that two other informants (identified as FBI-2 and FBI-3) had assisted the government and failed to address whether FBI-2 and FBI-3 could provide valuable information in the Nagi investigation thus negating the necessity for wiretaps; (2) CI Doug Burnett (identified in the Affidavit as FBI-1) was an employee at Defendant's restaurant and could have been further exploited as a confidential source before resorting to wiretaps; (3) in ¶ 21, the affiant

11

misrepresented that CI Doug Burnett was "opposed to mak[ing] consensually recorded conversations with subjects of [the] captioned investigation" because he wore a wire in the Anthony Viramontez investigation; (4) this misrepresentation is also made in the January 30, 2006 order extending the initial Burton/McDonald wiretap order and the March 2, 2006 order extending for the second time the October 7, 2005 Nagi wiretap order despite the Special Agent's knowledge that CI Doug Burnett agreed to wear a wire on January 20, 2006; and (5) in ¶ 21, the affiant falsely stated that CI Doug Burnett "has not provided information on any other FBI investigation."

The Court rejects Defendant's arguments for the following reasons. As to item (1), the October 7, 2005 Affidavit, in paragraphs 21-50, discusses in great detail the government's use of three confidential informants (FBI-1, FBI-2, and FBI-3, respectively). Despite Defendant Nagi's speculation, there is nothing in the October 2005 Affidavit to suggest that either FBI-2 or FBI-3 was in a position to provide future information about Defendant Nagi. Accordingly, the Affidavit's statement about the inadequacy of using confidential informants was not deliberately false or made in reckless disregard of the truth. As to item (2), CI Doug Burnett (identified as FBI-1) worked at Defendant Nagi's restaurant in April and May of 2005 – well before the wiretap October 7, 2005 Affidavit was prepared.

More importantly, as to items (3)-(5), the October 7, 2005 affidavit accurately states that FBI-1 was reluctant to wear a wire out of fear of discovery and was reluctant to testify out of fear for his safety and that of his family. In January 2006, he agreed to wear a wire after the government was able to convince him that he would be protected. That effort provided the government with information that led to the January 2006 wiretap authorization in the Viramontez investigation. Contrary to Defendant Nagi's arguments here, simply

because FBI-1 was convinced to wear a wire in one instance does not render false a statement that he was generally reluctant to do so out of fear for his safety and that of his family.

Moreover, despite Defendant's arguments otherwise, the October 7, 2005, January 30, 2006, and March 2, 2006 Affidavits accurately state that FBI-1 had not been used in any other investigation. As the government explained at the February 24, 2010 hearing, the Nagi, Burton/McDonald and Viramontez investigations were being conducted as a single investigation during this time.

### 2. Controlled Buys

Defendant Nagi concedes that the October 7, 2005 Affidavit asserts that FBI-1, Doug Burnett, was involved in a controlled buy with Defendant Nagi on September 7, 2005 for one pound of marijuana. (Suppl. Br. at 8.) Nonetheless, Defendant argues that the affiant's failure to mention that another controlled buy occurred on September 29, 2005 renders false and misleading the statement that controlled buys were inadequate to reveal the scope of the drug conspiracy. Defendant further argues that FBI-1's willingness to participate in controlled buys renders false the affiant's statement that he was unwilling to wear a wire out of fear for his life. Finally, Defendant argues that, because the month of September is crossed off and "October" is written in on the signature page, the date the wiretaps actually began is suspect.

The government responds that (1) participating in a controlled buys is materially different than wearing a wire; (2) the September 29, 2005 controlled buy was not included in the October 7, 2005 affidavit because it was submitted to the Attorney General for authorization several weeks earlier than that transaction; and (3) Defendant's crossed-out

13

date argument lacks merit.  The Court finds the government's arguments persuasive.

In light of the government's responses, a *Franks* hearing is not warranted.  Defendant Nagi has not made a substantial preliminary showing that the FBI Special Agents deliberately lied or made statements in their Affidavits in reckless disregard for the truth.

### C.  Need for Interception

Defendant Nagi's arguments challenging the need for wiretaps are substantially similar to those raised in Defendant Gebara's motion to suppress [1081].  There is no need to repeat those arguments and the government's responses here.  The conclusion is the same.  Defendant Nagi's arguments fail.  Each Special Agent Affidavit reveals that "serious consideration" was given to non-wiretap techniques.  Each Affidavit detailed the reasons why non-wiretap techniques were inadequate, detailed where the investigation stood at the time the affidavit was prepared, and detailed why the government reasonably believed that the requested wiretap was necessary to accomplish the identified objectives.  No more is required under 18 U.S.C. § 2518 or prevailing Sixth Circuit law.

### D.  Sealing Orders

Defendant Nagi's motion also argues that, because the government failed to provide him with copies of sealing orders, it must be trying to hide something.  The government responds that most housekeeping items, like sealing orders, are not provided in discovery.  Nonetheless, the government will provide these to Defendant Nagi.  Accordingly, this issue is now moot.

## III.  Conclusion

For the above-stated reasons, Defendant Nagi's motion to suppress is DENIED.

s/Nancy G. Edmunds                                 
Nancy G. Edmunds
United States District Judge

Dated:  March 1, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 1, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                                 
Case Manager