UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-01 AREF NAGI, et al.,

    Defendants.
_____/

Case No. 06-20465

Honorable Nancy G. Edmunds

**OPINION ADDRESSING RELEVANT CONDUCT FOR THE PURPOSE OF CALCULATING BASE OFFENSE LEVEL FOR DEFENDANT NAGI'S COUNT 2 RICO CONSPIRACY CONVICTION**

This matter comes before the Court after an extensive jury trial that began on April 1, 2010 and concluded with guilty verdicts on June 3, 2010. Defendants Nagi, Cicchetti, Ball Jr., Leonard "Dad" Moore, Joseph Whiting, and Anthony Clark, along with numerous other individuals, were charged in a second superseding indictment with violating federal racketeering laws and other federal laws involving violent acts, firearms, controlled substances, and stolen property. Each of these above-named Defendants held a leadership position in the Highwaymen Motorcycle Club ("HMC"). As to Defendant Nagi, the jury returned the following guilty verdicts:

<u>D-01 Aref "Steve" Nagi</u>
Ct. 1  -  18 U.S.C. § 1962(c)    Racketeer Influenced and Corrupt Organization ("RICO") - Conducting or Participating in affairs of an Enterprise through a Pattern of Racketeering Activity
Ct. 2  -  18 U.S.C. § 1962(d)    Conspiracy to violate RICO

| | | |
|---|---|---|
| Ct. 7  - | 18 U.S.C. § 1959(a)(3) | Assault with a dangerous weapon in aid of Racketeering ("Wheat & Rye") |
| Ct. 15 - | 18 U.S.C. § 2312 | Conspiracy to transport stolen vehicles in Interstate Commerce ("Myrtle Beach") |
| Ct. 16 - | 18 U.S.C. §§ 511, 371 | Conspiracy to alter, remove, and obliterate Vehicle Identification Numbers ("Walkabout Cycle") |
| Ct. 19 - | 21 U.S.C. § 846 | Conspiracy to Possess with intent to distribute and Distribution of Controlled Substances |
| Ct. 31 - | 18 U.S.C. § 924(c) | Use of Firearm during and in relation to crime of violence ("Wheat & Rye") |

The Court now considers an issue raised in Defendant Nagi's Sentencing Memorandum [1701] – how to calculate the base offense level for Defendant Nagi's Count 2 RICO conspiracy conviction. Specifically, what Racketeering Acts identified in Count 1 – the substantive RICO Count – constitute relevant conduct as defined in the United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1)(A) & (B) (Nov. 2010), and thus should be attributed to Defendant Nagi for the purpose of calculating the base offense level for his Count 2 RICO conspiracy conviction.

## I.  Background

### A.  Indictment and Jury Verdict

The specific Racketeering Acts ("R.A.") identified in Count 1 were as follows:

| | | | |
|---|---|---|---|
| R.A. 1  | - | Ruben Guzman | 9/10/03 Armed Robbery & Attempted Murder |
| R.A. 2  | - | Gerald Deese | Conspiracy to Commit Murder |
| R.A. 3  | - | Anthony Barton | Extortion |
| R.A. 4  | - | Steve Peet | Armed Robbery |
| R.A. 5  | - | Black Pistons | 3/04 Conspiracy to Commit Arson |
| R.A. 6  | - | Black Pistons | 3/27/04 Conspiracy to Commit Murder |
| R.A. 7  | - | Liberty Ridders | 02/06 Robbery |
| R.A. 8  | - | Myrtle Beach | Transporting & Receiving Stolen Vehicles |
| R.A. 9  | - | Burton/Peters | Conspiracy to Distribute Cocaine |
| R.A. 10 | - | Bo Moore | Conspiracy to Distribute Steroids |
| R.A. 11 | - | Nagi/Ball Jr. | Conspiracy to Distribute Controlled Substances |
| R.A. 12 | - | Dougie Burnett | Conspiracy to Commit Murder |

  R.A. 13 - Phil McDonald  Conspiracy to Commit Murder

The Jury Verdict form, under Count 1 – the substantive RICO count – , provided the following with regard to Defendant Nagi:

<u>Count One</u>

Not Guilty  _____

Guilty  _____

<u>Racketeering Act Eight</u>

Not Proven  _____

Proven  _____

<u>Racketeering Act Eleven</u>

Not Proven  _____

Proven  _____

The jury found, beyond a reasonable doubt, that Defendant Nagi was guilty on Count 1 and also found that Racketeering Acts 8 and 11 had been proven.

  The Jury Verdict form, under Count 2 – the RICO conspiracy count – , is not as specific. Under Defendant Nagi's name, it provides solely for a verdict of either Not Guilty or Guilty.

  **B.  Stipulations Between Defendant Nagi and Government Re: Sentencing**

  At the initial sentencing hearing held on January 11, 2011, the Government and Defendant Nagi agreed to the following matters affecting the issue presented here:

  1.  Nagi's involvement in the RICO conspiracy was from June 2004 through October 3, 2006.

  2.  Because Nagi did not join the enterprise until June 2004, he should not be held

accountable for any acts committed earlier than that date (Govt's Sentencing Mem. at 8, n.2). This includes:

| | | | |
|---|---|---|---|
| R.A. 1 | - | Ruben Guzman | 9/10/03 Armed Robbery & Attempted Murder |
| R.A. 5 | - | Black Pistons | 3/04 Conspiracy to Commit Arson |
| R.A. 6 | - | Black Pistons | 3/27/04 Conspiracy to Commit Murder |

3. R.A. 7 (the Liberty Riders assault) and R.A. 13 (the Phil McDonald murder conspiracy) should not be taken into account at Nagi's sentencing (Govt's Sentencing Mem. at 4). This applies to both Counts 1 and 2 – the substantive RICO count and the RICO conspiracy count, respectively.

## II. Analysis

In light of the above stipulations, the following eight Racketeering Acts remain to be evaluated under USSG § 1B1.3(a)(1)(A) & (B):

| | | | |
|---|---|---|---|
| R.A. 2 | - | Gerald Deese | Conspiracy to Commit Murder |
| R.A. 3 | - | Anthony Barton | Extortion |
| R.A. 4 | - | Steve Peet | Armed Robbery |
| R.A. 8 | - | Myrtle Beach | Transporting & Receiving Stolen Vehicles |
| R.A. 9 | - | Burton/Peters | Conspiracy to Distribute Cocaine |
| R.A. 10 | - | Bo Moore | Conspiracy to Distribute Steroids |
| R.A. 11 | - | Nagi/Ball Jr. | Conspiracy to Distribute Controlled Substances |
| R.A. 12 | - | Dougie Burnett | Conspiracy to Commit Murder |

USSG § 1B1.3(a)(1)(A) & (B) provide as follows:

(1) (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

    (B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in

4

>   preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

USSG § 1B1.3(a)(1)(A) & (B).

It is not disputed that the appropriate base offense level for Nagi's Count 2 RICO conspiracy conviction should be determined by referencing USSG § 2E1.1, which provides that the base offense level is the greater of 19 or "the offense level applicable to the underlying racketeering activity." Two issues are in dispute: (1) the burden of proof required to prove the existence of relevant conduct under USSG § 1B1.3; and (2) whether Racketeering Acts 2, 3, 4, 8, 9, 10, 11, and 12 constitute relevant conduct for the purpose of calculating the base offense level for Defendant Nagi's Count 2 RICO conspiracy conviction.

### A. Burden of Proof

As in *United States v. Corrado*, 227 F.3d 528, 541 (6th Cir. 2000), Defendant Nagi and the Government "dispute the burden of proof that the government bears in establishing an underlying offense that was not specified in a jury's verdict in order for that conduct to be used to calculate the defendant's base offense level" for sentencing on a RICO conspiracy conviction. In *Corrado*, the Sixth Circuit rejected the same USSG § 1B1.2 multi-object conspiracy Guidelines argument that Defendant Nagi makes here – "that the government is required to prove the existence of an underlying offense beyond a reasonable doubt." *Id.* After distinguishing RICO conspiracies from multi-object conspiracies, the *Corrado* court held that "[t]he existence of relevant conduct is determined at sentencing by a preponderance of the evidence." *Id.* at 542. It reasoned as follows:

>   The defendants in this case were convicted of a RICO conspiracy, however, not a multi-object conspiracy. There is a critical distinction between the two.

5

> The multi-object conspiracy section of the Sentencing Guidelines was enacted to deal with multiple object conspiracies charged in a single count. By contrast, a RICO conspiracy is considered a single object conspiracy with that object being the violation of RICO.
>
> Thus, the underlying acts of racketeering in a RICO conspiracy are not considered to be the *objects* of the conspiracy, but simply conduct that is relevant to the central objective – participating in a criminal enterprise. The existence of relevant conduct is determined at sentencing by a preponderance of the evidence.

*Id.* at 541-42 (internal quotation marks and citations omitted).

The same reasoning applies here. Defendant Nagi's burden of proof argument is rejected. The existence of relevant conduct for calculating a base offense level for Defendant Nagi's Count 2 RICO conspiracy conviction is determined at sentencing by a preponderance of the evidence. *Id.*

### B. Determination of Relevant Conduct Under USSG § 1B1.3(a)(1)(A) & (B)

"Relevant conduct includes, in pertinent part: (1) 'all acts or omissions' that the defendant 'committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused'; and (2) 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,' that occurred during, in preparation for, or in the course of attempting to avoid detection or responsibility for the RICO conspiracy." *United States v. Tocco*, 306 F.3d 279, 286 (6th Cir. 2002) (quoting USSG § 1B1.3(a)(1)(A) & (B)).

### C. Nagi Conduct - Racketeering Acts 8 and 11

When convicting Defendant Nagi on Count 1, the substantive RICO count, the jury found, beyond a reasonable doubt, that Nagi agreed to commit Racketeering Acts 8 and 11 – Transporting & Receiving Stolen Vehicles (Myrtle Beach) and Conspiracy to Distribute

Controlled Substances ((Nagi/Ball Jr.), respectively. As the Sixth Circuit observed in *United States v. Corrado*, 304 F.3d 593, 608 (6th Cir. 2002), "RICO predicate acts . . . for which a defendant is convicted necessarily constitute relevant conduct for the purpose of calculating the defendant's base offense level for a RICO conspiracy conviction."

### D.  Conduct of Others - Racketeering Acts 2, 3, 4, 9, 10 and 12

As to a defendant's accountability for the acts of others under USSG § 1B1.3(a)(1)(B), the Sixth Circuit requires that a district court "make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *Tocco*, 306 F.3d at 289 (internal quotation marks and citations omitted). Moreover, "to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. The fact that the defendant is aware of the scope of the overall operation is not enough to satisfy the first prong of the test and therefore, is not enough to hold him accountable for the activities of the whole operation." *Id.* (internal quotation marks and citations omitted).

### E.  Particularized Findings

In making its relevant conduct determination, the Court relies on the trial testimony, the exhibits introduced at trial, including the numerous wire-tapped conversations involving Defendant Nagi, and the Court's Opinion and Order denying Defendants' Rule 29 and Rule 33 motions [Doc. No. 1584]. In that Opinion and Order, the Court laid out the evidence describing the HMC's hierarchal organizational structure and the roles of each Defendant, including Defendant Nagi's membership on the committee that oversaw the activities of, and made decisions for, the HMC. There was evidence at trial that Defendant Nagi was

7

the vice president of the West Side Chapter at a time when Bobby Burton was the president. After the West Side Chapter closed, Nagi became a member of the Detroit Chapter.

As evident from the numerous wire-tapped conversations, Defendant Nagi held a leadership role in the HMC. While involved in the RICO conspiracy, Nagi was running a very substantial drug ring. He was moving all kinds of marijuana and other illegal drugs. He was involved in the theft of motorcycles, and he was out there in front on virtually every incident that occurred in the two-year period when he was actively involved with the RICO conspiracy.

In the Rule 29/33 Opinion and Order, this Court determined that there was ample evidence at trial of the RICO enterprise's criminal activity. This included acts of violence like assault, conspiracy to commit murder, and armed robbery. It also included theft, drug trafficking, and weapons offenses. These acts of violence arose from constant conflict with rival biker clubs. They also arose out of the leadership's efforts to enforce HMC's authority over a territory and its own members by directing attacks on persons perceived to have disrespected a fellow member in some manner, those perceived to have squealed, and those suspected of being snitches. Members enhanced and protected their reputation and standing as Highwaymen by using intimidation, threats, violent acts, and possession of weapons while carrying out acts of discipline, punishment, intimidation, and retaliation. Witness testimony and wire-tapped conversations, including those involving Defendant Nagi, showed that members of the HMC traveled in large groups and went to bars in large numbers so as to intimidate others and invoke fear of retaliation. HMC members were expected to protect each other. Failure to do so would result in punishment. Numerous

witnesses testified that, because of their reputation for violence and fear of retaliation, HMC members were more likely to get away with a crime of violence. They also used this reputation of violence to intimidate potential witnesses from facilitating the prosecution of members' criminal activity. The evidence in general and especially the wire-tapped conversations support a finding that Defendant Nagi was aware of and actively cultivated this fear of retaliation.

The evidence at trial also showed that members of the RICO enterprise, including Defendant Nagi, freely discussed, distributed, and shared controlled substances with other members. Members also used their reputations for violence, intimidation, and retaliation to collect drug debts for other members. The leadership of the RICO enterprise never objected to this criminal activity. Members of the RICO enterprise, including Defendant Nagi, also transported, received and/or possessed stolen property. There was ample evidence that HMC members used this criminal activity as a source of income. There was evidence at trial that at least one member, Doug Burnett, used some of his drug sales profits to pay his HMC dues.

### 1. Racketeering Act 2 - Conspiracy to Murder Gerald Deese

Although this incident with Gerald Deese involved Bobby Burton and others, it did occur while Defendant Nagi was actively involved in the RICO enterprise. Nagi elected to join the West Side Chapter of the HMC under the leadership of Bobby Burton and served as Burton's vice president. This incident occurred in January 2006 when Burton was president of the West Side Chapter and Nagi was his vice president. At no time did Nagi or anyone else in a leadership position discourage Burton's violent tendencies. In fact, this act of discipline, punishment, and intimidation was consistent with similar conduct on the

part of the members of the RICO enterprise.  Moreover, immediately after Bobby Burton assaulted Gerald Deese, the first person he called was Defendant Nagi.  He made two additional calls to Nagi after the Deese incident.  Accordingly, considering the evidence of Defendant Nagi's conduct and that of others, this Court finds that R.A. 2 was within the scope of Defendant Nagi's agreement to participate in the criminal activity of the RICO enterprise.  The Court also finds that, because it was common to use violence as a form of discipline and punishment for doing wrong to a fellow HMC member, this act of violence was reasonably foreseeable to Defendant Nagi.  This finding is consistent with Nagi's conviction on Count 7 for assault with a dangerous weapon in aid of racketeering (Wheat & Rye).  Based on these findings, R.A. 2 constitutes relevant conduct for purposes of calculating Defendant Nagi's base offense level for his Count 2 RICO conspiracy conviction.

**2.  Racketeering Act 3 - Anthony Barton - Extortion**

This February 2006 racketeering act occurred while Defendant Nagi was actively involved in the activities of the RICO enterprise.  Evidence at trial showed that HMC member Anthony Barton was supposed to be selling stolen televisions for other HMC members, but they thought he had pocketed the money instead.  He also owed the HMC money for back dues and fines.  Another HMC member told Barton that he would not be beaten – a common HMC form of discipline – if he paid him $1,700.  After Barton paid the money, a HMC member threatened to shoot Barton if he did not show up at the next HMC meeting.

There was testimony at trial that members of the RICO enterprise took part in, approved of, and received the benefit of stolen goods.  This illegal activity served as a

source of income for some HMC members. When Defendant Nagi was convicted on Count 1, the substantive RICO count, the jury found, beyond a reasonable doubt, that he was involved in the transport and receipt of stolen motorcycles from Myrtle Beach. The evidence at trial also established that if one HMC member was suspected of cheating another out of profits from their joint criminal activity, threats of violence and intimidation were typically used to discipline the errant member. From this evidence and evidence of Defendant Nagi's conduct and that of others, this Court finds that the conduct in R.A. 3 was within the scope of Nagi's agreement to participate in the criminal activity of the RICO enterprise. Moreover, the Court finds that the use of threats of violence to intimidate and extort the payment of money thought to be owed to another member was reasonably foreseeable to Defendant Nagi. Based on these findings, this extortion constitutes relevant conduct for purposes of calculating Defendant Nagi's base offense level for his Count 2 RICO conspiracy conviction.

### 3. Racketeering Act 4 - Steve Peet - Armed Robbery

This June 2006 racketeering act also occurred while Defendant Nagi was actively involved in the activities of the RICO enterprise. Trial evidence showed that the armed robbery of Steve Peet involved the collection of a drug debt owed by Peet for the purchase of a quantity of cocaine. Based on evidence that HMC members used their reputations for violence to collect drug debts as well as evidence of Defendant Nagi's conduct and that of others, the Court finds that the armed robbery of Steve Peet was an act within the scope of Defendant Nagi's agreement to participate in the criminal activity of the RICO enterprise. The Court also finds that this act of violence was reasonably foreseeable to Defendant Nagi. Members of the RICO enterprise frequently engaged in acts of violence, and it was

reasonable for Nagi to foresee that violence would be used to intimidate and discipline an HMC member who owed another member money on a drug debt. Based on these findings, this armed robbery constitutes relevant conduct for purposes of calculating Defendant Nagi's base offense level on his Count 2 RICO conspiracy conviction.

### 4. Racketeering Acts 9 and 10 - Cocaine and Steroid Drug Conspiracies

As the Court observed in its Opinion and Order on Defendants' Rule 29/33 motions, evidence at trial showed that the drug trafficking activity in Racketeering 9 (evidence regarding the Robert Burton drug conspiracy), Racketeering Act 10 (evidence regarding the steroid drug conspiracy), and Racketeering Act 11 (evidence regarding the Nagi drug conspiracy) was related to and an integral part of the RICO enterprise and its activities. For example, ample trial evidence exists showing that members of the HMC sold to or distributed/shared drugs with other members. The record is replete with testimony about HMC members sharing cocaine with Defendants. There is abundant evidence that the HMC condoned drug trafficking and drug use despite language to the contrary in its constitution. It was a common occurrence to have drug deals and drug use at the HMC clubhouse. The HMC leadership did not stop this criminal activity. The opposite is true. Witnesses testified that leadership members, including Nagi, shared the cocaine that was provided by others who dealt drugs at the clubhouse. There was evidence that HMC leaders used other HMC members for protection, to distribute product, to collect drug debts, and to assault people who "stiffed" them on drug deals. There was ample evidence that officers, members, and associates of the HMC used HMC clubhouses to facilitate the sale and distribution of controlled substances. Based on the above-cited evidence and evidence of Nagi's conduct and that of others, this Court finds that the drug conspiracies

in R.A. 9 and 10 were within the scope of Defendant Nagi's agreement to participate in the criminal activity of the RICO enterprise. Based on this same evidence, the Court finds that the drug conspiracy conduct in R.A. 9 and 10 was reasonably foreseeable to Defendant Nagi. Based on these findings, these drug conspiracies constitute relevant conduct for purposes of calculating Defendant Nagi's base offense level for his Count 2 RICO conspiracy conviction.

### 5.  Racketeering Act 12 - Conspiracy to Commit Murder Doug Burnett

The RICO enterprise's concern and desire to punish snitches was well established at trial. There are wire-tapped conversations, including one between Defendant Nagi and Jeff Olko that discusses the need to find the snitch. There is a lot of evidence that HMC members suspected that Doug Burnett was the snitch, that he had tipped off law enforcement and triggered searches of the HMC Clubhouse and members' homes. Multiple witnesses testified that, during the summer of 2006, there was a lot of talk at the Detroit Chapter Clubhouse about discovering and punishing the snitch or rat. Doug Burnett's picture was hanging behind the bar at the Detroit Chapter Clubhouse with "rat" written across it. There is ample evidence that the RICO enterprise operated by disciplining members and used intimidation and threats as well as acts of violence to stop HMC members and others from telling law enforcement about the enterprise's criminal activities. It was well known that snitches were not tolerated and would be violently punished.

Based on the above and evidence of Defendant Nagi's conduct and that of others, this Court finds that the conspiracy to murder a suspected snitch like Doug Burnett was an act within the scope of Defendant Nagi's agreement to participate in the criminal activity of the RICO enterprise. Because there was ample evidence at trial that members of the RICO

enterprise used both threats and acts of violence to discipline, intimidate, and punish those suspected of reporting criminal activity to law enforcement officials, the Court also finds that this particular act of violence was reasonably foreseeable to Defendant Nagi. Based on these findings, the conspiracy to murder Doug Burnett constitutes relevant conduct for purposes of calculating Defendant Nagi's base offense level on his Count 2 RICO conspiracy conviction.

    SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: January 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 14, 2011, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager