UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AREF NAGI, D-1,

    Defendant.

_____/

Case No. 06-cr-20465

Honorable Nancy G. Edmunds

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE [3092]**

Before the Court is Defendant Aref Nagi's motion to reduce his sentence to time served, filed under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. (ECF No. 3043.) The Government opposes the motion. (ECF No. 3099.) Defendant has filed a reply. (ECF No. 3109.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court GRANTS Defendant's motion for compassionate release.

**I.**     **Background**

Defendant Aref Nagi is a former member of the Highwaymen Motorcycle Club ("HMC"), a multi-state outlaw motorcycle gang with its national headquarters in Detroit, Michigan. On December 15, 2009, Defendant and 90 other members of HMC were charged in a superseding indictment with violations of laws relating to racketeering and drug trafficking, among other things. (*See* ECF No. 997.) After a multi-week trial, Defendant was found guilty by a jury of a substantive RICO violation, RICO conspiracy, conspiracy to transport stolen property in interstate commerce, conspiracy to alter vehicle

1

identification numbers, conspiracy to possess and distribute drugs, assault with a dangerous weapon in aid of racketeering, and using a firearm during and in relation to a crime of violence. Based on these convictions, this Court sentenced Defendant to a total term of imprisonment of 37 years. (ECF No. 1873.)

After judgment was entered, Defendant appealed his firearm conviction to the Sixth Circuit and then to the Supreme Court. On May 19, 2014, the Supreme Court vacated Defendant's judgment in light of the recently decided *Rosemond v. United States*, 572 U.S. 65 (2014).[1] *See Aref Nagi v. United States*, 572 U.S. 1111 (2014). Even though *Rosemond* only applied to Defendant's firearm conviction, the case was remanded to this Court under a general remand which allowed the Court to re-sentence Defendant on all the counts upon which he was convicted. (*See* ECF 2766.) The Court took into consideration updated information regarding Defendant's exemplary conduct in prison and re-sentenced Defendant to a cumulative 20-year term of imprisonment.

Defendant began serving his prison sentence in approximately October 2006 and his expected release date is currently May 13, 2024. He is 58 years old and incarcerated at FCI Sandstone, a low security federal correctional institution in Sandstone, Minnesota. Since beginning his term of incarceration, Defendant reports he has completed over 6,000 hours of evidence-based recidivism programming and approximately 4,000 additional hours of faith-based study. (ECF No. 3092, PageID.23867-68.) Indeed, his prison records show an astounding effort towards rehabilitation—Defendant has participated in well over 100 educational courses ranging from basic math and history classes to business,

---

[1] In *Rosemond v. United States*, the Supreme Court held the government must prove "advance knowledge that a confederate would use or carry a gun" and that jury instructions must include that the "defendant knew in advance that one of his cohorts would be armed" in order to prove a violation of 18 U.S.C. § 924(c), use of a firearm during and in relation to a crime of violence. 572 U.S. 65 (2014).

wellness, problem solving, and law classes. (ECF No. 3092, PageID.23881-23889.) He has also completed multiple vocational apprenticeships in trades including culinary arts, automotive technology, and industrial housekeeping. (*Id.*)

Notably, Defendant also participates in, or holds leadership roles in, at least three organizations aimed at serving the community. First, Defendant has committed himself to the development of re-entry initiatives outside of the prison context to reduce the recidivism rates of others who are similarly situated. (ECF No. 3092, PageID.23868.) According to a United States District Court Judge familiar with the program in Minnesota, where Defendant is incarcerated, the Reentry Court has been very successful in terms of reducing violation rates. (ECF No. 3092, PageID.23943.) As of December 2020, the violation rate for program participants was under 30 percent and 95 percent of the participants were employed. (*Id.*) Defendant states he seeks to begin a similar program in this district and provides evidence that he has been in touch with the Chief Judge for the Eastern District of Michigan and its Chief Public Defender. (ECF No. 3092, PageID.23947-50.)

Defendant has also participated in the development of a community-based youth awareness program aimed at communicating with high-school students about the dangers and consequences of criminal behavior. (ECF No. 3092, PageID.23868.) Finally, Defendant is actively involved in FCI-Sandstone's inter-faith chaplain program in which he mentors others and serves as the inmate liaison.  (ECF No. 3092, PageID.23869.)

On April 19, 2021, Defendant requested compassionate release from the warden of his facility. (ECF No. 3092, PageID.23876.) That request was denied on April 23, 2020. (ECF No. 3092, PageID.23877.) Defendant now moves the Court for compassionate

3

release based upon a combination of factors including his physical and mental health in the face of the COVID-19 pandemic, his level of commitment to rehabilitating himself, and for the purpose of assisting his ailing mother who requires the assistance of an immediate family member to help with the tasks of daily living. The government "commends" Defendant's "laudable" rehabilitation efforts (ECF No. 3099, PageID.24062, 24088), but opposes Defendant's motion because he has "no serious medical issues," refused the Moderna COVID-19 vaccine when it was first offered to him, has already contracted COVID-19 and recovered, and because his rehabilitative efforts are insufficient on their own to support compassionate release. (ECF No. 3099); *see also* 28 U.S.C.§ 994(t). The government also argues that the 18 U.S.C. § 3553(a) sentencing factors do not favor early release.

## II.     Analysis

The "compassionate release" provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons if three requirements are met: (1) if "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the relevant § 3553(a) factors support the reduction. § 3582(c)(1)(A); *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). An inmate may bring a compassionate release motion on his own behalf once he exhausts any administrative remedies or 30 days after requesting relief from the Bureau of Prisons. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (citing *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020)).

Section 3582 does not define "extraordinary and compelling reasons." Thus, "district courts have discretion to define 'extraordinary and compelling' on their own

4

initiative." *Elias*, 984 F.3d at 519-20; *see United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020). But "discretion" does not mean the court's power is without limit. *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). For instance, an inmate's rehabilitation, standing alone, is not an extraordinary and compelling reason for a sentence reduction. *Id.* at 561 (citing 28 U.S.C. § 994(t)). Courts in this circuit are also prohibited from factoring in non-retroactive changes in the law as well as facts that existed when the defendant was sentenced. *Id.* at 562. Thus, the defendant's personal circumstances must have changed after sentencing in a way that is both extraordinary and compelling. *Id.* at 569-70.

As for the remaining requirements, unless the court is considering a motion filed directly by the Bureau of Prisons, district courts are now permitted to "skip step two of the § 3582(c)(1)(A) inquiry" and move straight to an analysis of the § 3553(a) factors. *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021). This is because there are no policy statements applicable to inmate-filed motions. *Elias*, 984 F.3d at 519. The Sixth Circuit instructs that a court at this step should not "simply relitigate and reweigh the § 3553(a) factors based on facts that existed at sentencing." *Hunter*, 12 F.4th at 569. A court may, however, consider information or factors that it could not consider under the first prong of its analysis, such as changes in sentencing laws. *Id.* at 564.

### A. Exhaustion of Administrative Remedies

Defendant has exhausted his administrative remedies by requesting compassionate release from the warden and waiting until that request was denied before filing the present motion. (ECF No. 3092, PageID.23876-77.) Thus, this threshold requirement for relief has been satisfied. *See Ruffin*, 978 F.3d at 1004.

5

### B. Extraordinary and Compelling Reasons

Defendant presents several reasons for compassionate release that he believes are "extraordinary and compelling." The Court will analyze them in turn. *See United States v. Jarvis*, 999 F.3d 442, 222 (6th Cir. 2021) (finding that reasons for compassionate release cannot be aggregated to collectively entitle a defendant to a sentence reduction when those reasons are insufficient when considered in isolation.) First, Defendant believes he has a compromised immune system as a result of his documented longtime use of corticosteroids. (*See* ECF No. 3092, PageID.23871; ECF No. 3100.) The government does not address this argument directly claiming only that Defendant has "no serious medical issues." (ECF No. 3099, PageID.24073.) In a footnote, however, the government acknowledges that prior to March 29, 2021, the CDC recognized the "use of corticosteroids" as a condition that "might" entail a greater risk of severe illness from COVID-19. (ECF No. 3099, PageID.24072 n. 4.) CDC guidance has since been updated and the word "might" has been removed from this section of its advice. *See COVID-19: Medical Conditions,* Centers for Disease Control and Prevention (last updated Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Relying on official guidelines from the CDC is "a common practice" among courts in assessing compassionate-release motions. *Elias*, 984 F.3d at 521. In the context of the COVID-19 pandemic, many courts have found "extraordinary and compelling reasons" to reduce a defendant's sentence in cases where his or her health presents an increased risk of serious disease according to official guidelines from the CDC. But more recent guidance from the Sixth Circuit provides that "a defendant's incarceration during the

6

COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, -- F.4th ----, 2021 WL 4699249, at *3 (6th Cir. Oct. 8, 2021). This is because a prisoner who is vaccinated "largely faces the same risk from COVID-19 as those who are not incarcerated." *Id.*

Given the wide availability of the COVID-19 vaccine, the holding in *Lemons* essentially forecloses most defendants' health-related arguments for compassionate release brought due to fear of contracting COVID-19 in the congregate prison setting. *See United States v. Traylor*, -- F.4th ---, 2021 WL 5045703, at *1 (6th Cir. Nov. 1, 2021) (confirming Lemons and finding that although the defendant's medical conditions were serious, his incarceration during the COVID-19 pandemic did not present an extraordinary and compelling reason for a sentence reduction). The *Lemons* court did, however, identify an exception to its rule in cases where a defendant is "unable to receive or benefit from a vaccine." *Id.* (citing *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)).

CDC guidelines currently provide that "[p]rolonged use of corticosteroids or other immune weakening medicines can lead to secondary or acquired immunodeficiency. People who have a condition or are taking medications that weaken their immune system *may not be protected even if they are fully vaccinated*." *See COVID-19 Cases*, Federal Bureau of Prisons (last updated Oct. 28, 2021), https://www.bop.gov/coronavirus/. (emphasis added). Defendant has been vaccinated against COVID-19,[2] but according to

---

[2] Defendant initially refused the Moderna COVID-19 vaccination. He states he was hesitant to be vaccinated before the vaccine was granted full approval by the United States Food and Drug Administration (FDA). Three days after the government filed its response to Defendant's motion, the FDA approved the Pfizer-BioNTech COVID-19 vaccination. Following this approval, Defendant was vaccinated with the Pfizer-BioNTech vaccine. (ECF No. 3109, PageID.24697.)

7

this guidance he may still be at risk of severe disease. (ECF No. 3109, PageID.24697.) And while there are presently no active COVID-19 cases at FCI-Sandstone, the facility has certainly seen its share of infections and one inmate has died. *See COVID-19 Cases*, Federal Bureau of Prisons (last updated Oct. 28, 2021), https://www.bop.gov/coronavirus/. Additionally, according to Defendant, only about 50 percent of the FCI Sandstone staff is vaccinated. (ECF No. 3109, PageID.24682.) As the government acknowledges in its brief, these unvaccinated staff members "present a more likely vector for COVID-19 transmission into an institution." (ECF No. 3099, PageID.24065.) The Court therefore finds that Defendant's longtime use of corticosteroids is an extraordinary and compelling reason for compassionate release.

Defendant also believes his family circumstances and mother's health constitute an extraordinary and compelling reason for compassionate release. In support of this argument, he provides evidence that his mother is incapacitated and requires a caregiver to help with tasks such as bathing, dressing, and mobility. (ECF No. 3109, PageID.24692.) According to Defendant, his mother's strict adherence to Islam limits her options for caregivers to Defendant's immediate family members, all of whom are unable to provide care to Defendant's mother at this time. (ECF No. 3109, PageID.24684.) This leaves Defendant as his 82-year-old mother's only potential caregiver.

While non-binding, a court may look to U.S.S.G. § 1B1.13, if it so chooses, "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021); *Hunter*, 12 F.4th at 562. The commentary to § 1B1.13 suggests that extraordinary and compelling reasons may exist where a defendant is the only available caregiver for an

8

incapacitated spouse. U.S.S.G. § 1B1.13 n.1(C)(ii). Relying on this provision, at least one court has extended § 1B1.13 to include the need to care for an incapacitated parent. *See United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019).

As in *Bucci*, this Court finds the need to care for an incapacitated parent to be an extraordinary and compelling reason for a sentence modification when there are no other caregivers available. The documents and letters submitted to the Court show that Defendant's ailing mother requires assistance with the tasks of daily living. Due to her strict religious observances and the unavailability of Defendant's siblings and other family members, Defendant is the "only available caregiver." *See* U.S.S.G § 1B13 n.1(C)(ii). Accordingly, the Courts finds this to be an extraordinary and compelling reason for compassionate release.

Because Defendant has sufficiently shown "extraordinary and compelling reasons" for compassionate release, the Court declines to analyze Defendant's remaining arguments in this regard. The government's argument that Defendant has already contracted COVID-19 does not change the Court's conclusion. It is now common knowledge that one can be reinfected with COVID-19 even after making a full recovery. Finally, as discussed above, even those who are fully vaccinated may be at risk of severe illness or death from COVID-19 if they have a weakened immune system or are taking medications that weaken their immune system, such as corticosteroids. *See COVID-19: Medical Conditions,* Centers for Disease Control and Prevention (last updated Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Compassionate release is therefore permissible in this case pending an analysis of the 18 U.S.C. § 3553(a) factors.

### C. Section 3553(a) Sentencing Factors

As at sentencing, the 18 U.S.C. § 3553(a) factors require consideration of a defendant's history and characteristics, the nature and circumstances of the offense, the seriousness of the offense, the need to protect the public from further crimes of the defendant, the need to promote respect for the law, and the need to provide just punishment to Defendant and adequate deterrence to others. *See* 18 U.S.C. § 3553(a). "District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision . . . [b]ut 'as long as the record *as a whole* demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulate' its analysis of every single § 3553(a) factor." *Jones*, 980 F.3d at 1114 (emphasis in the original) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007)); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

According to the Government, Defendant's motion should be denied because of Defendant's crimes and conduct were "serious, dangerous, and warranted the significant sentence he received and is still serving." (ECF No. 3099, PageID.24089.) Defendant does not dispute the seriousness of his crime, but states he is seeking out ways to give back to the community after his mistakes. (ECF No. 3092, PageID.23853.) He has asked for forgiveness from others and hopes to one day forgive himself. (*Id.*)

The Court agrees with the government that the seriousness of Defendant's crimes and the nature and circumstances of those offenses weigh against granting the relief Defendant seeks. Nevertheless, the Court finds the balance of the sentencing factors as a whole weigh in favor of granting Defendant's motion.

10

Most notably, Defendant's laudable efforts at rehabilitation firmly weigh in favor of granting his motion.[3] The Supreme Court has described positive post-sentencing conduct as "a critical part of the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider[,]" as shedding "light on the likelihood that [a defendant] will engage in future criminal conduct," and as bearing "directly on [a] District Court's overarching duty to 'impose a sentence sufficient, but not greater than necessary,' to serve the purposes of sentencing." *Pepper v. United States*, 562 U.S. 476 (2011). Defendant here has actively sought not only to make changes in his own personal life, but to change the lives of others through service to his community. His level of commitment is unmatched, and the Court commends him for his efforts.

Additionally, the Court is satisfied that the need to protect the public does not require Defendant to remain incarcerated. Defendant is currently imprisoned in a low-security correctional institution and has achieved a risk assessment of "minimum," showing that he presents the lowest risk of recidivism. He has overwhelming family and community support as evidenced by the dozens of letters attached to his motion. He is also involved in faith-based organizations and voluntarily works towards helping other inmates reintegrate into society. This factor therefore weighs in favor of compassionate release.

Finally, when considering deterrence factors along with the need to promote respect for the law and provide just punishment, the Court finds these factors to be neutral in this case. Defendant has served approximately fifteen years of his sentence. While this

---

[3] While the record shows that Defendant completed some of these hours before his resentencing in 2016, the majority of hours spent towards rehabilitative efforts occurred after sentencing and therefore may be construed as a reason to grant compassionate release. *See Hunter*, 12 F.4th at 562.

Case 2:06-cr-20465-NGE-MKM ECF No. 3114, PageID.24927 Filed 11/03/21 Page 12 of 12

is less time than originally anticipated at Defendant's sentencing, fifteen years of incarceration is far from a slap on the wrist. Moreover, the conditions of incarceration during the pandemic were not something this Court could have predicted.

Accordingly, the Court finds the § 3553(a) factors weigh in favor of granting Defendant's motion. Therefore, compassionate release is warranted.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release is GRANTED. The custodial portion of Defendant's sentence is reduced to time served;

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a five-year term of supervised release. Defendant shall serve his supervised release according to the conditions imposed by the Court in its original judgment with additional terms to be considered in the Court's discretion and in consultation with the Probation Department.

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 3, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 3, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

12